THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COM-
PANY v. CHESTER R. PLASKETT, *by his next friend and
father, G. R. Plaskett.*

CHILD, *Injured — Company not Liable for Damages.* Where a railroad
company stops its train not to exceed a minute, as it approaches a
railroad crossing within the limits of an incorporated city, and while
its cars are standing over a street crossing a child seven years of age,
on his way home from school, attempts to take hold of the brake lad-
der on a freight car in the train, for the purpose of climbing over
the car, and the train starts just as he makes the effort to get onto
the car, and jerks him off so that he falls under the wheels and is run
over and injured, and the train-men have no knowledge of the attempt
upon the part of the boy to board the train, *held*, that the company
is not guilty of such negligence toward the boy as to render it liable
for damages on account of such injury.

### Error from McPherson District Court.

ACTION to recover damages for bodily injuries. Judgment
for plaintiff, *Plaskett,* at the October term, 1888, for $6,000
damages. The defendant *Company* brings the case to this
court. The facts appear in the opinion.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plain-
tiff in error.

*Lucien Earle,* and *C. M. Bruce,* for defendant in error.

Opinion by GREEN, C.: This was an action brought by
Chester R. Plaskett, by his next friend and father, G. R.
Plaskett, against the Atchison, Topeka & Santa Fé Railroad
Company, for damages alleged to have been caused by the
negligence of the defendant. The action was tried before the
court and jury in McPherson county, and resulted in a ver-
dict and judgment for $6,000 for the plaintiff. A number of
errors are assigned, for which a reversal is asked.

The undisputed facts in this case are: That on the 5th day
of December, 1887, a freight train consisting of 27 or 28 cars
passed through McPherson, between three and four o'clock in

the afternoon, going east. The railroad track, in the limits of the city, is located about the middle of Simpson street, which runs east and west; among the streets running north and south, and in the order named extending east, are Main, Ash, Elm, and Oak. As the train crossed the last-named street, it whistled and stopped for the Rock Island crossing. The plaintiff, who was at that time seven years and two months old, was returning from school along Oak street, to his home, situated on the north side of the track from the school-house, which was located one block from the intersection of Simpson and Oak streets. The child was accompanied by some eight or ten boys and girls about his own age, going north along Oak street, on the sidewalk. As they reached the crossing, they found the street obstructed by this freight train, and, according to the evidence of the plaintiff, it had been standing there about a minute, when he went up to the train and one of his schoolmates said to him, "Let us climb over across and go home;" and when that was said he started to climb over, and the train moved; that he caught hold of the rod or ladder by which the brakemen climb to the top of the cars, before the train started; that the boy with him helped him to get onto the cars, and, after he got hold, the train moved. The movement of the train jerked him under the cars and the wheels passed over his right leg, making amputation necessary below the knee. There was no flagman or gates at this crossing, which was one of the principal crossings of the city, which contained at that time a population of some 5,000. The special findings of the jury are as follows:

"1. Did the plaintiff, Chester R. Plaskett, take hold of defendant's train? Ans. Yes.

"2. If yes, was the said train in motion and moving and being moved at the time plaintiff took hold of it? A. No.

"3. Did the plaintiff attempt to get on the defendant's train while the same was in motion? A. No.

"4. Did the plaintiff know that there was danger in attempting to get on the defendant's train under the circumstances? A. No.

"5. If your answer to the last question be no, state fully

the reason that he did not know of said danger. A. He was too young to know danger.

"6. Was the defendant guilty of willful and gross negligence toward the plaintiff under the circumstances? A. They were guilty of gross negligence, not willful.

"7. If yes, state fully in what such willful and gross negligence consists? A. In the train-men knowing this place was frequented by school children, and not being on the lookout.

"8. Was the defendant guilty of ordinary negligence under the circumstances? A. Yes.

" 9. If your answer to the last question be yes, state particularly in what said negligence consisted. A. The train-men not being at their proper places.

"10. How many school children necessarily used the sidewalk and crossing where the accident occurred? A. From 40 to 60.

"11. If you find for the plaintiff, how much damages do you allow him for physical pain and mental suffering? A. One thousand dollars ($1,000).

"12. How much do you allow — how much damages do you allow plaintiff as the natural and probable result of the injury? A. Five thousand dollars ($5,000).

"13. How much do you allow plaintiff as exemplary damages? A. 000.

"14. Did the acts of the plaintiff contribute to the injury? A. Yes."

The first, and perhaps the only question for our determination in this case is, whether the railroad company was guilty of any negligence, or violated any duty which it owed to this child, as it ran its train through the city of McPherson. It is unnecessary for us to discuss the different degrees of negligence, for the reason that most courts of last resort, notably the supreme court of the United States, fail to recognize any negligence unless it be culpable. The findings of the jury, upon which negligence is predicated in this case, consist in the fact that the train-men knew that the crossing where the accident occurred was frequented by children going to and from school; that they were not on the lookout for persons crossing the track, or in a proper position upon the train to prevent persons from climbing on the cars. These were the only findings imputing negligence to the defendant below. It was a

proper precautionary measure for the company to stop its train at the crossing of another railroad, and one which the law recognizes.   The evidence indicated that the train was running at a slow rate of speed through the city, and came to a full stop as it approached the Rock Island crossing, and immediately started again; the engineer, fireman and forward brakeman were on the engine, and looked to see that the track was clear; they did not see the plaintiff attempt to board the train. Can it be successfully claimed that the defendant owed a duty to this child to have men posted at proper intervals on top of the train to keep vigilant watch and see that he did not attempt to climb upon its cars?   While greater care is demanded in the operation of trains in populous cities than in sparsely-settled districts through which a railroad may run, we do not think the law imposes any such a duty upon a railroad, even in cities.   It would be difficult to conceive how a train could be successfully guarded so as to prevent persons from climbing on to the cars at crossings, or moving at a low rate of speed through towns and villages.

But it is claimed that the railroad company did owe to this child the duty of active vigilance, to see that he was not injured; that the condition of things at the crossing in question, the population of the city, and the almost constant travel over the railroad track, being but a block from the school-house where 700 or 800 children were in attendance; and that the safety of these children demanded the utmost care and the greatest precaution upon the part of the company.   It is doubtless true that this crossing was used a great deal by children going to and from school, and it therefore became necessary to exercise a great degree of care to prevent accidents, but the regulation of this and the other crossings rested primarily with the city authorities, and the failure to properly guard these crossings can hardly be charged as negligence upon the part of the defendant when no ordinance of the city required it.   To uphold the verdict and judgment in this case, there must be some negligence chargeable to the railroad company. The tender years of the child may indeed excuse him from

concurring negligence in this case, but his inability to contribute to the cause of the injury, on account of his youthfulness, cannot supply that negligence which the law says must exist before he would be entitled to recover damages. In a case not unlike this in many respects, this court has said:

"In all courts culpable negligence consists in the failure to exercise the amount of care required, whether that amount be slight, ordinary, or great, and whether the corresponding degree of negligence be called gross, ordinary, or slight, or merely negligence. In the present case, we take it that all the parties having any connection with said accident were required to exercise that degree of care and diligence which an ordinarily prudent person would exercise under like circumstances. This is ordinary care, and the failure to exercise it would be ordinary negligence, or culpable negligence, or, as some courts would say, merely negligence, and if all the parties in this case exercised ordinary care, then no one was guilty of culpable negligence. Now, all negligence, to be culpable, necessarily implies the failure to properly perform some duty. Now, what duty did the railroad company owe to Charles W. Henigh which it did not properly perform? No relation existed between them. He was not a passenger, nor an employé, and had no business with the railroad company of any kind or character. He had no right to climb upon said car as he did, nor to touch it, nor even to go upon the company's premises. Technically, he was a mere trespasser, and the company owed to him no duty except such as it owes to trespassers in general, or except such as it owes to all mankind. We have heretofore held that all persons must use their property and conduct their affairs with reference to the rights of all other persons, and with reference to all known or anticipated surroundings, and that even trespassers have a right to expect that such will be done. (*K. C. Rly. Co. v. Fitzsimmons*, 22 Kas. 686, 690, *et seq.; K. P. Rly. Co. v. Brady*, 17 id. 380, 384, *et seq.*) And we will still adhere to this doctrine. But no person is bound to anticipate something which is not likely to occur, or to so conduct his affairs as to prevent accidents which are not likely to happen. This has reference where no specific duty exists, but only such general duties as all mankind owe to each other." (*C. B. U. P. Rld. Co. v. Henigh*, 23 Kas. 347.)

See also the case of *A. & N. Rld. Co. v. Flinn*, 24 Kas. 627.

The principle decided in these two cases settles the question of the liability of the railroad company in this case. We do not think any wrong was shown upon the part of the plaintiff in error.

We recommend a reversal of the judgment of the court below.

By the Court: It is so ordered.

All the Justices concurring.

*Per Curiam:* The case of A. T. & S. F. RLD. CO. v. PLASKETT, No. 5665, was submitted with the case of the same title, also from McPherson district court. All of the questions involved in this case were also involved in that, and the judgment of the court below is reversed upon the authority of that case.