The Atchison, Topeka & Santa Fé Railroad Company v. Henry A. Todd, *as Administrator of the estate of Wm. H. Todd, deceased.*

Railroad Track—*Death of Trespasser on Track—No Recovery.* A bright, intelligent boy, between 9 and 10 years of age, acquainted with railroad cars and tracks, sat down under a car in the yards of the railroad company at a point where there was no highway nor public crossing, and while there a switch engine in charge of a crew was backed against the car under which he sat and he was killed. Those in charge of the engine could not possibly see him from their posts of duty, and none of the employés of the company were aware of his presence, or had any cause to anticipate that he was under the car, until after the accident occurred. He was a conscious trespasser, who frequently had been cautioned that there was danger in going under the cars, and he understood and appreciated the perils of the position which he occupied. *Held,* That no recovery can be had against the railroad company by reason of his injury and death.

*Error from Sedgwick District Court.*

Action by *Henry A. Todd,* as administrator of the estate of William H. Todd, deceased, against *The Atchison, Topeka & Santa Fé Railroad Company* and the Wichita & Western Railway Company, to recover damages for negligently killing William H. Todd, while he was sitting under a freight car in the yards of the railroad company in Wichita. The jury returned a verdict for $650 against the Atchison, Topeka & Santa Fé Railroad Company, and with their verdict the following answers were returned to special questions:

"1. Q. Is it not a fact that the accident in question occurred

in the yards of the Wichita & Southwestern Railroad Company, at the point in question, where said railroad was operated by the Atchison, Topeka & Santa Fé Railroad Company? A. Yes.

"2. Q. Is it not a fact that William H. Todd, at the time of the accident, was a trespasser upon the track of the railroad company? A. Yes.

"3. Q. Is it not a fact that, at the time of the accident in question, the said William H. Todd was sitting under a freight car, and was playing? A. No evidence as to his playing, but was under the car.

"4. Q. At the time of the accident in question, what business, if any, did the said William H. Todd have under the freight car of the defendant the Atchison, Topeka & Santa Fé Railroad Company? A. None.

"5. Q. Is it not a fact that the yards of the defendant in the city of Wichita, at the time of the accident, were in the neighborhood of two miles in length, and that there were from 350 to 375 cars in said yards, on an average, daily, about the time of the accident? A. Yes.

"6. Q. Did any of the employés of these defendants know that the said William H. Todd was under the car in question prior to the injury? A. No.

"7. Q. Is it not a fact that the child's father, Henry A. Todd, had as good an opportunity to know that he was under the car as the defendant just prior to the accident? A. No.

"8. Q. Is it not a fact that the said William H. Todd was nine years and three months old at the time of the accident? A. Yes.

"9. Q. Is in not a fact that he was a bright and intelligent boy for his age? A. Yes.

"10. Q. Is it not a fact that the said deceased, William H. Todd, knew that it was wrong to go under the cars and to sit and play there? A. Yes.

"11. Q. Is in not a fact that the said William H. Todd had been frequently cautioned, prior to the accident, by his parents, of the danger attending his going upon or under the cars. A. Yes.

"12. Q. Is it not a fact that a prudent, intelligent and bright boy of nine years and three months old, who had been frequently cautioned not to go under the cars, would ordinarily know and appreciate the risk of going under the cars to such extent as to know it would be dangerous? A. Yes.

"13. Q. Is it not a fact that the deceased, William H. Todd, had no right or authority from the railroad company to sit under the car in question? A. Yes."

"15. Q. Do you find from the evidence that the fireman, Burchie, was a competent fireman? A. No.

"16. Q. Do you find from the evidence that the engineer of the switch engine was a competent engineer? A. By his own evidence, yes."

"18. Q. Isn't it a fact that a boy seven years of age, of average intelligence and brightness, would understand and appreciate the danger of remaining under or going under freight cars and remaining there, in a railroad yard where cars are being continually switched? A. Yes.

"19. Q. Do you find that underneath the cars in railroad yards there is commonly anything especially attractive to children to play with? A. No."

"21. Q. Is it not a fact that, between Douglas avenue on the north and the place where the switch track on which deceased was injured joins the main track, there are no public highways or street crossings? A. Yes.

"22. Q. Do you find from the evidence that the deceased was capable, considering his years, of understanding and knowing something of the danger he placed himself in by playing under the cars? A. Yes."

"25. Q. Do you find from the evidence that the bell on the engine was rung just before the engine started onto the switch from the main track? A. No.

"26. Q. Is it not a fact that the deceased had the capacity at the time of the injury to know the probable results of being under the car at the time of injury, if the engine should be backed onto the car and the car moved? A. Yes.

"27. Q. Is it not a fact that the deceased, William H Todd, at the time of the injury, knew that the cars were frequently switched about in the defendant's yard and on th east side tracks thereof. A. Yes."

"29. Q. How wide was the right-of-way at the point of the injury? A. About 207 feet.

"30. Q. Did the defendant recklessly and wantonly run over the deceased? A. No; but negligently.

"31. Q. What do you find would have been the probable length of life of the deceased, if he had not been injured as alleged? A. No evidence.

"32. Q. Is it not a fact that there are no street crossings

across the defendant's yards between Douglas avenue and where the west side track converges into the main track, south of Douglas avenue? A. Yes.

" 33. Q. How far was the child's father from him at the time of the injury? A. Eight or 10 feet.

"34. Q. Was the said William H. Todd, deceased, of sufficient capacity to know that the ringing of the bell of the engine would be a signal of the approach of the engine and of danger to him? A. Yes."

" 36. Q. How long before the injury was it that the deceased, William H. Todd, went out of the fanning-mill shop to the west door? A. One to three minutes.

" 37. Q. When said William H. Todd went out of the fanning-mill shop onto the track, did his father know he had gone out there? A. No.

" 38. Q. Is it not a fact that the bell was rung just before the switch engine started out on the east side track just prior to the accident? A. No."

" 40. Q. What warnings, if any, did the defendant fail to give of the approach of the switch engine just prior to the injury? A. Failed to give the proper warnings."

" 44. Q. Is it not a fact that, prior to the accident, Henry Todd, father of the deceased, had whipped William H. Todd for going upon the railroad track and about the cars? A. Yes."

" 49. Q. Is it not a fact that the door of the fanning-mill shop next to the east side track was about four feet wide, and was open at the time of the accident? A. Yes.

" 50. Q. How far do you find that this door was from the east rail of the east side track? A. Four or five feet.

" 51. Q. How far was the father of William H. Todd at the time of the accident from the west door of the fanning-mill shop? A. Four or five feet.

" 52. Q. Was any signal given of the approach of the engine just prior to the injury? A. No.

" 53. Q If you answer 'no' to the last question, do you find that if such a signal had been given that it would have been a warning to the father that his child, William H. Todd, was in danger in time for the father to have rescued said child? A. No.

" 54. Q. Did said father know that William H. Todd, deceased, was in the switch yards of the defendant just prior to the injury? A. No."

"57. Q. Could the engineer or fireman of the switch engine in question by any means have seen the deceased, William H. Todd, underneath the car without first leaving the engine to look under the car? A. No."

"59. Q. If you find for the plaintiff, how much, if anything, do you find in your general verdict for loss of the service of the deceased to his parents during his minority? A. Nothing.

"60. Q. If you find for the plaintiff, how much do you allow in your general verdict for loss of the society of the deceased to his next of kin? A. Nothing.

"61. Q. If you find for the plaintiff, how much do you allow in your general verdict for pain and suffering of the deceased by reason of the accident? A. Nothing.

"62. Q. If you find for the plaintiff, how much do you allow for grief of next of kin by reason of the death of the deceased? A. Nothing."

The railroad company filed a motion for judgment, under the evidence and the special findings of the jury, which was overruled, and judgment rendered in favor of the plaintiff below. The railroad company alleges error.

*A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error:

Under the undisputed evidence and the findings of the jury, judgment should be rendered in favor of the railroad company.

It is not claimed that any of the employés, prior to the accident, saw the dangerous position of the boy, or that they discovered his whereabouts in time to prevent the injury. He was so concealed under the box car that it would be almost impossible for the men operating the train to discover him. It is simply claimed that the defendant was negligent in failing to give some warning or signal of the switching which was being done on that track. While it is doubtful whether, if a signal were given, the deceased would have been advised of the approach of the cars upon that track in time to avoid the injury, yet, as to this boy, the railroad company did not owe the duty of warning him. He was a trespasser; he had no right to be where he was, and he knew that it was

wrong for him to be there. The railroad company gave him no leave or license to enter its yards, nor was leave or license given to the public generally to enter these yards, and therefore it was not incumbent upon the railroad company to adopt or take precautions for the protection of those who had no legal right to be there.

The evidence did not show a license on the part of the railroad company, but the contrary. It showed that boys were not allowed in this yard, but that they were always driven away when discovered. See *Hyde v. Mo. Pac. Rly. Co.*, 19 S. W. Rep. 483. The only duty which the railroad company did owe to one who was not rightfully upon its premises, whether an infant or an adult, was not to willfully or wantonly injure him; but such duty would not arise until it had discovered the whereabouts and the perilous situation of the trespasser. See *K. P. Rly. Co. v. Whipple*, 39 Kas. 532, 539; *Tennis v. Rapid Transit Rly. Co.*, 45 id. 503. And the rule is the same even as to a licensee. See *Mason v. Mo. Pac. Rly. Co.*, 27 Kas. 84, 87, 88. See also, *Lachat v. Lutz*, 22 S. W. Rep. 218; *Benson v. Traction Co.*, 26 Atl. Rep. 973; *Jansen v. Siddall*, 41 Ill. App. 279; *Faris v. Hoberg*, 33 N. E. Rep. 1028; *Gibson v. Leonard*, 32 id. 182; *Mathews v. Bonsee*, 16 Atl. Rep. 195; *Pierce v. Whitcomb*, 48 Vt. 127; *Morrissey v. Railroad Co.*, 126 Mass. 377; *Catlett v. Railway Co.*, 21 S. W. Rep. 1062; *A. T. & S. F. Rld. Co. v. Plaskett*, 47 Kas. 107; *C. B. U. P. Rld. Co. v. Henigh*, 23 id. 347; *McDermott v. K. C. Rly. Co.*, 20 S. W. Rep. 380; *C. & A. Rld. Co. v. McLaughlin*, 47 Ill. 265.

The special findings show that the deceased was guilty of contributory negligence. While the question of his contributory negligence would, in a disputed case, be proper for the determination of the jury, they have found such facts in their special verdict as show the deceased to have been of sufficient capacity to understand the danger, to know that he was doing wrong, and therefore, as a matter of law, to be held guilty of contributory negligence; and therefore there can be no recovery. See *Twist v. W. & St. P. Rly. Co.*, 37 Am. & Eng.

Rld. Cas. 336, 340, 341.; *Wendell v. Railroad Co.*, 91 N. Y. 420, 421.

The father was guilty of negligence in permitting his boy to go into a place of danger, and therefore there can be no recovery. This suit is brought for the benefit of the father and mother, and it is manifest that if they or either of them were guilty of negligence contributing to the injury, no recovery ought to be permitted in their favor; for, if the wrong was caused in part by their own negligence, they should not be compensated in damages. See *B. & O. Rld. Co. v. The State*, 30 Md. 47; *City of Chicago v. Starr*, 42 Ill. 174; *T. W. & W. Rld. Co. v. Miller*, 76 id. 278.

The petition does not allege that the next of kin were damaged in any sum, and the special findings show no damage; therefore, the judgment should be for the defendant.

An examination of the petition will show that there is no allegation whatever to the effect that the next of kin were damaged on account of the death of William H. Todd. This was a material averment. Damages suffered on account of a wrong must be alleged and proved. See *Hurst v. Detroit City Rly. Co.*, 48 N. W. Rep. 44–46.

No appearance for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: William H. Todd was killed while sitting under a car in the yards of the railroad company at Wichita. These yards are about two miles long, and over 300 yards wide, and, at the point where the fatality occurred, there was no public thoroughfare or street crossing, nor was there any inducement or implied invitation held out to enter upon the yards. Nothing about the cars was especially attractive to children, and there was nothing to lead the employés of the company to anticipate that persons would be sitting under the cars in the yard. While a switch engine was moving cars about the yard, it backed against the one under which Todd was sitting, and in some way the wheels passed over his body

and killed him.   He was not seen by any of the employés of the company, and, what is more, the men who controlled the movements of the engine could not by any means have discovered his perilous position unless they had left the engine to look for him.

Under the findings of the jury, no ground is seen upon which to base a recovery.   Todd had gone upon the tracks without invitation or right, and was a conscious trespasser when the accident occurred.   He was in a place where the company had the exclusive use of the tracks, and where there was no reason to anticipate that intruders or trespassers would be concealed.   Under such circumstances, there was no duty on the part of the company to foresee his wrongful presence, nor did any duty arise in his favor until his presence was discovered.   As a general rule, before the company can be made liable for injury to trespassers, it must appear that the proximate cause of the injury was the failure of the company to use reasonable care to avoid injury to them, upon becoming aware of the peril to which they were exposed.   Where those in charge of the train have reason to anticipate that persons may be upon the tracks, a duty may arise to keep a lookout for them, and if through their recklessness or carelessness injury is inflicted, when the exercise of ordinary care would have discovered the danger and averted the accident, a liability in some cases may arise.   In this case, however, there was no reason to anticipate the presence of Todd under the car, and the exercise of ordinary care on the part of those in charge of the engine in looking along the track would not have discovered his presence.   The only duty which the company owed to him was not to recklessly or wantonly run over him after they discovered him in a place of danger.   (*K. P. Rly. Co. v. Whipple*, 39 Kas. 532.)   The undisputed evidence and the findings show that Todd was not recklessly or wantonly injured, and as those in charge of the engine did not know and had no reason to know of the presence of Todd under the car, how can any negligence be imputed to them?   There can be no liability against the company unless it failed in its duty

toward Todd, and under the findings it is difficult to discover any breach of duty or negligence which can be said to have caused the injury. (*A. T. & S. F. Rld. Co. v. Plaskett*, 47 Kas. 107, and cases cited.)

We need not rest the decision of the case upon the care or negligence of the company, however, as it is clearly established by the special findings that the boy himself was guilty of contributory negligence.

" It is now the settled rule in this and other states, where the plaintiff seeks to recover for injuries on the ground of the defendant's negligence, that, if the ordinary negligence of the plaintiff directly or proximately contributed to the injury, he cannot recover unless the injury was intentionally and wantonly caused by the defendant." (*Tennis v. Rapid Transit Rly. Co.*, 45 Kas. 503.)

It is true that the deceased was a child, and that the law does not require the same degree of care on the part of a child as of a person of mature years, but even a child must exercise care proportionate to his age and capacity; and whether he does use such care or not is ordinarily a question for the jury to determine. In every such case the question of whether there is contributory negligence is to be determined from the age and intelligence of the child, and his ability to understand the dangers of the place where the injury occurs. A child is bound to use such reasonable care as one of his age and mental capacity is capable of using, and his failure to do so is negligence, which will defeat a recovery for any injury which he may sustain.

The findings of the jury leave no doubt in this case that the deceased had sufficient capacity to understand the danger to which he was exposed. They show that he was a bright, intelligent boy, between 9 and 10 years of age, who had been about railroad yards, and who knew and appreciated the danger of going under the cars. He had been frequently cautioned before the accident of the danger there was in going under the cars, knew that it was wrong to go there, and understood the probable results of being under a car if the

engine should be backed against it while he was there. The findings of the jury satisfactorily show that he understood and appreciated the danger to which he was exposed, and therefore any negligence on his part which contributed directly to his injury defeats a recovery therefor. (*Dowling v. Allen*, 88 Mo. 293; *Cauley v. Railway Co.*, 98 Pa. St. 498; *Railway Co. v. Smith*, 46 Mich. 504; *Twist v. W. & St. P. Rly. Co.*, 37 Am. & Eng. Rld. Cas. 336; *Wendell v. Railroad Co.*, 91 N. Y. 420; *Railroad Co. v. McMulle*, 19 Atl. Rep. 28; *Mitchell v. Railroad Co.*, 19 id. 28; *Pettit v. Railway Co.*, 59 N. W. Rep. 1082.)

The facts found by the jury show that there was no culpable negligence on the part of the company, and that the deceased was a conscious trespasser, capable of understanding the dangers of the position which he occupied, and therefore did not exercise the ordinary care which the law requires. It follows that the judgment must be reversed, and the cause remanded, with instructions to enter judgment upon the findings in favor of the plaintiff in error.

All the Justices concurring.