THE MISSOURI PACIFIC RAILWAY COMPANY v. I. A. PREWITT *et al.*

### No. 11082.

NOT NEGLIGENCE NOT TO STOP—*or slow up train on seeing object not apparently of consequence, where presence of children not likely, though object prove to be a child.* The employees of a railroad company, operating a passenger train on schedule time, at a point where the presence of trespassing children is not to be suspected by them, who perceive a small object upon the track, of a nature they do not understand, but which they have no reason to believe from its appearance or any of the circumstances of the case to be a child, or any living thing, or anything of substantial value which can be injured, or do injury to the train or passengers, are not required to stop or slow up until its nature can be ascertained by them; and, if it be a child, but the fact is undiscoverable by them until too late, with approved machinery and appliances, and the exercise of the highest skill and effort upon their part to avoid injury to it, they will not be considered negligent.

Error from the Court of Appeals, Southern Department. Opinion filed November 5, 1898. *Reversed.*

*J. H. Richards* and *C. E. Benton*, for plaintiff in error. *Hamilton & Leydig*, of counsel.

*Shinn & Knowles*, for defendants in error.·

DOSTER, C. J. This was an action to recover damages for the death of an infant two years and four months old, caused, as alleged, by negligently running upon and over it with a train of cars. A verdict and judgment for $550 was rendered for plaintiffs in the trial court. Upon proceedings in error to the Court of Appeals the judgment was affirmed. *Mo. Pac. Rly. Co. v. Prewitt,* (7 Kan. App.) 51 Pac. 923. The case has been ordered here for review. The only question necessary for consideration arises upon the special findings of the jury as to the circumstances of the accident. Such of the findings as are most material to this question are as follows :

"1. Did the engineer when he discovered an object upon the track make any effort to slacken the speed of his train so that it could be stopped if necessary before passing over the object? A. Not when he first discovered the object.

"2. Could the engineer have stopped the train before striking the child had he taken such measures as were in his power at the time he first discovered the object on the track and before he knew and recognized it to be a child ? A. Yes.

"3. Were the engineer and fireman in doubt as to the nature of the object when they first discovered it upon the track and until they recognized it as a child ? A. Yes.

"4. How far was the said Bertie Prewitt from any public highway or crossing at the time of the accident ? A. About 147 rods.

"5. How far was the house in which the plaintiffs

and said Bertie Prewitt lived from the place where the said child was injured ?    A.  About 47 rods.

"10.  Is it not true that when the engineer in charge of the engine first discovered the object which afterwards proved to be the said Bertie Prewitt, he believed that said object was a piece of paper or weed which had blown upon the track ?    A.  No.

"11.  Is it not true that when the engineer first discovered the object which afterwards proved to be Bertie Prewitt upon the track that he believed it to be something that could not be injured and which would not endanger his train or the passengers upon it ?  A.  Yes.

"12.  Prior to the time that the engineer or fireman discovered that the said object was a child, did they, or either of them, believe or have any reason to believe that a child might be upon the railway track at that point?    A.  No.

"13.  Is it not true that from the time the said object was first discovered upon the track by the engineer and fireman up to the time when they discovered that it was a child, both said engineer and fireman believed that it was a piece of paper or weed, or something of that character which could neither be injured nor do damage to the train?    A.  No.

"15.  Was the place where said Bertie Prewitt was injured a place that was frequented by children or where children were in the habit of playing or being?    A.  No.

"16.  From the time the object which afterwards proved to be Bertie Prewitt was first discovered by the engineer or fireman, did the said Bertie Prewitt move or give any signs of life which could be noticed by either the fireman or engineer?    A.  No.

"19.  Did either the engineer or fireman prior to the time they, or either of them, discovered that said object was a child, have any idea that it was any living thing?    A.  Yes.

"52.  Does not the evidence show that the child was, at and before the time it was killed, lying motionless on the southern slope of the surfaced earth between the rails?    A.  Yes.

"53.  Does not the evidence show that when the

engineer and fireman first discerned the child they did not know what it was but thought it was a paper or weed? A. Yes.

" 54. Does not the evidence show that neither the engineer nor the fireman knew that it was a living creature until after the engineer asked the fireman what it was and just prior to the time that he reversed his engine and applied the brakes. A. Yes.

" 55. Does not the evidence show that if the engineer had doubt at all as to what the character of the object was up to the time that he discovered that it was a child and the time when he applied the brakes and reversed his engine, he had no thought that it was a child or human being? A. Yes.

" 56. Does not the evidence show that as soon as the engineer discovered it was a child he did everything in his power to stop the engine and train and save its life? A. Yes.

" 58. Is it not true as established by the evidence that the train was equipped with the best modern appliances and with what is known as the Westinghouse Improved Air Brakes, for the stopping of the engine and train in cases of emergency, and that they were in good working order at the time of the accident? A. Yes.

" 59. Is it not true that the engineer in charge, Peter Lahey, was above the average engineer in sobriety, good habits and skill? A. Yes.

" 60. Does not the evidence show that at the time of the accident the engineer was in good health and in full possession of all his faculties? A. Yes.

" 61. Does not the evidence show that the fireman, Leroy Liggitt, was a skilful fireman and a man of good habits and faithful in the discharge of his duty? A. Yes, according to testimony."

Other findings, not important to set out in full, disclose the fact that a ditch and a hedge fence with an opening in it, intervened between the house of the child's parents and the place of the accident. From all these findings it would appear that the child had wandered from the care of its parents to the railroad

47—59 KAN.

track, and had lain down 147 rods from any public highway crossing, and was probably asleep at the time of its death. Such cases greatly move the sympathies, and incline us all to try to find for the stricken parents some balm to assuage their grief. The law, however, will not impose penalties upon an innocent cause of human sorrow, however poignant the suffering may be.

Do the findings show fault upon the part of the Railroad Company, through the negligence of its employees? The findings numbered ten and fifty-three would appear to be contradictory as to what the engineer thought the object on the track was when he first discovered it. So far as the fact inquired about, and concerning which answers were made, is involved in the substance of the case, a claim of reversal might be founded upon these contradictory findings. We will not however base our judgment upon any theory of inconsistency in the findings, but upon the substantial facts of the case disclosed by them as a whole. These substantial facts were that the child was not run upon at a public highway crossing nor at a place frequented by children, and that there was nothing in its appearance to indicate to the enginemen that it was a human creature or any living thing which could be injured or do injury to the train or passengers, until it was too late to avoid running over it. In view of such fact can the Railroad Company be rightfully accused of negligence? We feel sure that it cannot. Regard must be had at the outset, in the consideration of such cases, to the duties resting upon railroad companies as public carriers of passengers and property, and to the manner in which those duties must of necessity be discharged. Trains must be run upon time schedules. They cannot conform to the schedule if obliged to stop at the appear-

ance upon the track of all objects the nature of which is only discernible upon near approach. Rags, papers, weeds, fowls and small animals are perceived and run over between all the stations in the travel of a train.   To stop, or even to slow up, at the sight of all these objects, would entail upon the trainmen a consumption of time and a degree of carefulness which would make the business of railroading a difficult, burdensome and unsystematic one indeed.   The obligations resting upon railroad men in the operation of trains rise or increase, of course, with the thickening or increase of warning circumstances of peril.   So they do in all human affairs where dangerous agencies are employed.   The failure to rise in care and diligence to the height of a dangerous occasion, as indicated by circumstances, is negligence.   If however no circumstances indicating danger are known or perceivable, though they really exist, it cannot be said that negligence has occurred.   In this case had the object perceived by the trainmen been at a highway crossing, where the presence of small children might be suspected, or had it been at a place frequented by them for play, near a school-house, or in or on the outskirts of a village, the case might be different.   A railroad company owes some duty to trespassers.   It must not wantonly run its trains upon them even though they be trespassers. It must have a care for them at places and under circumstances where trespassing is liable to occur; but it does not owe to them, however guiltless of intelligent wrong conduct they may be, to care for them in out of the way and unusual places, unless signs and circumstances indicate their presence.

It would extend this opinion to an unnecessary length to enter upon and carry through an analysis of the above quoted findings, to show that negligence upon the part of the Railroad Company is not disclosed

by them.   Synthetically considered they show the opposite of negligence, or rather show that no circumstances calling for the exercise of diligence upon the part of the trainmen to avoid the accident were known to them, or 'were in reason to be apprehended by them.   They show engine machinery and appliances of approved pattern and good working order; they show that the engineer and firemen were men of skilfulness, sobriety, faithfulness in the discharge of duty, and in possession of all required faculties. They show that the place of the accident was not one where small children would reasonably be expected. They show indeed circumstances making it unreasonable to suspect the presence of small children at such place.   They show that prior to the time when the enginemen discovered that the object on the track was a child, they did not believe or have reason to believe it was one.   They show that when the enginemen first discovered the object on the track, they believed it to something that could not be injured and which would not endanger the train or passengers.   They show that as soon as the enginemen discovered the object upon the track to be a child, they did everything in their power to stop the train and save its life.   They do however show, as contended by defendants in error, that the enginemen were, for a time after their discovery of the object upon the track, and up to the time they perceived it to be a child, uncertain as to its character; but the fact is collectable out of all the findings, and expressed in some of them, that the trainmen had no reason to believe that the object was a child, nor even a living creature until, as stated in finding fifty-four, just prior to the time the engineer reversed his engine and applied the brakes; and that practically up to that time, he did not believe it to be anything that could be injured or which would injure the train or

passengers.   Upon the facts, as disclosed by the find-ings quoted, the Court of Appeals ruled the law to be thus —

"The duty of an engineer in charge of a passenger train, when he discovers an object upon the track, the nature of which he does not understand, is, if possible, to bring his train under control, until the nature of the object is known, that he may be able to stop if necessary to prevent injury."

We do not assent to this statment of the law.   It leaves out of consideration the element of reasonable belief, from the circumstances of the case, that the non-understandable object was a human-being, or some thing of substantial value which could be injured, or which would do injury to the train or passengers.   As stated before, there is no duty resting upon the men in charge of a train to stop or slow up at the sight of every object upon the track, the precise nature of which cannot be understood, unless it be such as from its appearance and the surrounding circumstances, is of a character to indicate danger, either to the object or to the train.   There are some cases which give countenance to a contrary rule, but the most of those cited by counsel for defendants in error disclose facts which render them dissimilar to this one.   The great weight of authority is to the contrary of the view taken by the District Court and the Court of Appeals.

The case of *A. T. & S. F. Rly. Co. v. Todd* (54 Kan. 558, 38 Pac. 805), was an action to recover damages for the death of a boy between nine and ten years of age, and this court said :

"He was in a place where the company had the ex-clusive use of the tracks, and where there was no reason to anticipate that intruders or trespassers would be concealed.   Under such circumstances, there was no duty on the part of the company to foresee his wrongful presence, nor did any duty arise in his favor

until his presence was discovered. As a general rule, before the company can be made liable for injury to trespassers, it must appear that the proximate cause of the injury was the failure of the company to use reasonable care to avoid injury to them, *upon becoming aware of the peril to which they were exposed.* . . . *The only duty* which the company owed to him was not to *recklessly or wantonly run over him after they discovered him in a place of danger.*"

The case of *Crystal v. Troy & B. R. Co.* (N. Y., 11 N. E. 380), was an action against a railroad company to recover damages for running over and injuring a child seventeen months old. The negligence relied on by plaintiff was the failure of the engineer to discover the child upon the track in time to stop the train. It was claimed that he might have seen the child sooner, but the court held that there could be no inference that the engineer could have seen the child sooner than he did, and that plaintiff was not entitled to recover. In the opinion the court said :

" But there can be no doubt upon this evidence that after the engineer discovered that the child was in peril, he did all he could to arrest the motion of his train. That he wilfully or recklessly ran upon him after he discovered that he was in peril is inconceivable and certainly cannot be assumed. An engineer is not bound to stop his train the moment he sees some living object upon the track. He has the right in broad daylight, when his train is perfectly visible and its approach must be heard and known, at least in the first instance, to assume that the object, whatever it is, will leave the track in time to escape injury. He is not bound to expect helpless infants upon the track, without sufficient knowledge or ability to escape when warned of danger. He could not know when he first saw the plaintiff, that he was too young to be conscious of the danger to which he was exposed ; and without the imputation of negligence he could run on until he discovered that he was heedless of the danger. Reasonable care in the management of trains

which must make their time between stations and have the right of way does not require more.   The defendant is not responsible for an error of judgment, if there was any, on the part of the engineer as to the speed of his train, the distance, age and peril of the child, and his ability to stop the train in time to protect him.   All the engineer was bound to do after the discovery of the peril was to use reasonable diligence and care to avert it, and there was no evidence which authorized the jury to find that he did not do this.''

The opinion of the Court of Appeals is disapproved, and the judgment of the District Court is reversed, with directions to enter it, upon the findings, for the defendant, instead of the plaintiff in that court.