**Joseph J. Joy, Administrator, Appellant, v. Chicago, Burlington & Quincy Railroad Company, Appellee.**

**Gen. No. 5,812.**

1. RAILROADS, § 517*—*duty to trespassers on track.* A railroad company owes no duty to a person walking along its tracks without its invitation, either express or implied, except to refrain from wilfully or wantonly injuring him, and to use reasonable care to avoid injury to him after he is discovered to be in peril.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

2.  RAILROADS, § 536*—*when not required to reduce speed.* Not the duty of an engineer upon seeing an object on the track to reduce speed so that he could stop in case the object should turn out to be a human being.

3.  DEATH, § 76*—*when direction of verdict for defendant proper.* In an action against a railroad company for wrongful death of deceased who was a trespasser on the track, a direction of a verdict for defendant *held* proper where there is nothing in plaintiff's evidence to show that the men in charge of the engine had reason to anticipate that the deceased was other than an inanimate object on the track.

4.  COSTS, § 33*—*when administrator not taxable with costs.* In an action by an administrator for wrongful death of deceased, a judgment against the administrator for costs, awarding execution therefor, is erroneous.

5.  APPEAL AND ERROR, § 1703*—*when erroneous judgment for costs, waived.* Objection that judgment is erroneous in not limiting the payment of costs to due course of administration, and in awarding execution, *held* waived when not argued in appellant's brief.

Appeal from the Circuit Court of La Salle county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed October 17, 1913.

R. A. GREEN, H. M. KELLY and BUTTERS & ARMSTRONG, for appellant.

BOYS, OSBORN & GRIGGS, for appellee; J. A. CONNELL, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

Joseph Hayes was killed by being struck by the engine of a passenger train, northbound, between the stations of Ottawa and Dayton on a branch of the Chicago, Burlington & Quincy Railroad, and his administrator brought this action to recover damages for the loss to his next of kin, a widow and child. After the third count had been withdrawn, the declaration consisted of two original and two additional counts. The first count charged that Hayes was on the track a mile

---

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

south of Dayton and unable to care for his own safety and in great peril; that defendant's servants operating the train in the daytime knew of the presence of Hayes on said track a sufficient time to have avoided injuring him by the exercise of due care, but that they wantonly and negligently ran the engine against him and he was thereby killed. The second count was similar but omitted the charge of wantonness. The first additional count alleged that defendant's servants were aware of the peril of Hayes and wantonly and negligently ran against him. The second additional count was the same, except that it averred that after defendant's servants became aware of the peril of Hayes, they negligently ran against him and killed him. Defendant pleaded not guilty. Upon a jury trial, at the close of the evidence for the plaintiff, the court directed a verdict for the defendant, which was rendered, denied a motion for a new trial and entered a judgment for defendant for costs. The judgment was erroneous in not limiting the payment of costs to due course of administration, and in awarding an execution and this is assigned for error, but it is not argued in appellant's brief and is therefore waived.

Hayes was lying outside the tracks with his body and legs extending towards or into the ditch, but with his head and right arm resting on the rail. The head was pushed off the rail and the arm was cut off and Hayes died later the same day. The place where this accident occurred was on a north and south track about three-quarters of a mile south of a public highway crossing, a mile and three-quarters or two miles north of another public highway crossing and about eighty rods north of a private crossing. The nearest house was a quarter of a mile distant. It was therefore a place remote from houses and highways. There was nothing in the evidence to show that the men running the engine had any reason to anticipate the presence of human beings on the right of way at that place. The only persons who saw the object before the injury were

the engineer and fireman. The fireman died before the trial. The plaintiff took the deposition of the engineer, who was then out of the employment of the railroad company. When he testified, he was old and had been very ill and was unable to leave his home, and it is evident that his memory was much impaired. He testified that as the engine came around a curve from eighty to one hundred rods south of where Hayes was struck, he saw an object west of the rail and upon the west rail; that no part of the body was visible from the engine, except the head and shoulders, until they got close to him; that he did not know that the object was a man, but thought it was a bunch of waste paper; that some days before that he had stopped his train at that place because of an object on the track and it turned out to be a bundle of waste paper out of a sand car, and when he saw this object, on the day in question, he thought it was a bundle of waste paper, the same as he had stopped for before, that if he had realized when he first saw it that the object was a human being, he could have stopped his train, which was running up grade at about twenty or twenty-two miles per hour, but that thinking it to be a bundle of waste paper, he paid no further attention to it until they were four or five rods from the object, when the fireman said it was a man, and the witness then did all he could to stop, but could not bring his train to a stop until the third car was opposite the body. There was no other testimony to throw any doubt on this testimony by the engineer. If his testimony were rejected, there is no other testimony having a tendency to make a case for plaintiff. The jury could not reasonably believe, contrary to his evidence, that when he first saw the object he recognized that it was a human being. Appellant contends that when the engineer first saw this object he should have realized that it was possible that it was a human being and that due care then required that he should bring his train under control so that he could stop before he reached it, if

upon nearer approach it turned out to be a human be-
ing, and also that due care required that he should
constantly watch the object after he first saw it.

Hayes was a trespasser and the place was remote
from human habitation and foot travel. The duty of
a railroad company to such a person has been many
times stated by our Supreme Court and is stated as
follows in *Illinois Cent. R. Co. v. Eicher*, 202 Ill. 556.

"A railroad company owes no duty to a person
walking along its tracks without its invitation, either
expressed or implied, except to refrain from wantonly
or wilfully injuring him, and to use reasonable care
to avoid injury to him after he is discovered to be in
peril."

Appellant relies upon *Martin v. Chicago & N. W.
Ry. Co.*, 194 Ill. 138. There an engine and caboose
were going along an elevated track in the city of Chi-
cago. The fireman saw an object on the track one
thousand four hundred feet ahead but did not believe
it was a man and said nothing to the engineer until
the engine was within three hundred and sixty or three
hundred and eighty feet of where the man was lying, and
then he informed the engineer that there was a man
on the track and the engineer applied air and reversed
the engine and failed to stop until he had run over and
killed the man. The trial judge at the close of all the
evidence, directed a verdict for the railroad company,
and that action was affirmed by the Appellate Court
and the Supreme Court reversed the judgment and re-
manded the cause. The deceased in that case was in
fact an engineer for the defendant on his way to the
place where he would take his engine. At the place
where the accident happened there had been a passen-
ger station and there was a stairway on each side of
the tracks. For some unknown reason, this engineer
went up this stairway and onto these tracks and fell
there and apparently received some injury by the fall
which made him unconscious. Three engineers testi-
fied, and it was admitted that a fourth engineer would

testify, that such an engine traveling at the speed shown, if properly handled, could have been stopped within one hundred and twenty-five feet. There was therefore evidence in that case tending to show that the engineer did not use due care to stop after he knew that there was a man on the track ahead. This evidence made it error for the court to give a peremptory instruction and warranted the reversal. But the Court further in the opinion said:

"But was it not a fact that an object, such as would attract attention such a distance, so upon the track at a place where it would be least expected, was sufficient to put those in charge of the engine on inquiry? And was it not the duty of the fireman, when he saw the object in this strange and unusual place for an object of that size to be, to at least call the attention of the engineer to it at once, and not wait to speculate as to whether it was an animate object, which the engine might kill, or an inanimate object, which might derail the engine and kill those operating it? Can there be any doubt in a reasonable mind, if the engineer who had not seen this object and did not know of it until after he had passed the watch-tower, had been advised of its presence at Hamlin avenue, he could and would have so put his engine under control that neither of the possible accidents could have happened?"

Appellant contends that these questions show that the court meant to hold that, as soon as some object was discovered, it was the duty of the engineer to reduce speed so that he could stop if it turned out to be a human being. Assuming that the court, by the language above quoted, intended so to hold, it is to be remembered that this was said of a location in the midst of a populous city and at a place where the railroad company maintained stairs which invited the access of human beings to the tracks at that point and that such a rule would not reasonably be equally applicable to a place in the open country, remote from

foot travel and where there is no evidence that any trespasser had ever traveled before, unless it be the testimony by one witness that the deceased, who had been in Ottawa on the day in question, was accustomed to go home on foot by the Burlington railroad. It is our conclusion that it would be unreasonable to hold a railroad company to the duty of stopping its trains whenever some object is visible on the road ahead. Dogs, fowls, paper, must often be upon the track ahead of an engineer. To require an engineer to stop his train whenever any object is discerned ahead, and when he has no reason to suppose and does not suppose it to be a human being, would be destructive of its ability to answer the just demands of its patrons and would be entirely beyond the rule laid down in this State. The engineer testified that only the head and shoulders were visible until the engine nearly reached the object. It is obvious that it might readily be that a view of head and shoulders only would not suggest the presence of a human being. The engineer had stopped there a short time before because of an object which turned out to be a bunch of waste paper from a sand car. He thought this was the same or a similar object. We are of opinion that the rule above quoted from *Illinois Cent. R. Co. v. Eicher, supra,* does not apply when the engineer merely sees some object ahead, but that in favor of a trespasser the duty only arises when those in charge of the engine discover a human being in peril. Some decisions in other States hold differently and those decisions in part rest on statutes governing the subject. The rule which we deem to be the law in this State is variously stated and applied in *Palmer v. Oregon Short Line R. Co.,* 34 Utah 466; *Norfolk & W. R. Co. v. Dunnaway's Adm'r,* 93 Va. 29; *Louisville, H. & St. L. R. Co. v. Hathaway's Ex'x,* 121 Ky. 666; *Louisville, N. & T. Ry. Co. v. Williams,* 69 Miss. 631; *San Antonio & A. P. Ry. Co. v. McMillan,* 100 Tex. 564; *Little Rock, M. R. & T. Ry. v. Haynes,*

47 Ark. 497; *Missouri Pac. Ry. Co. v. Prewitt,* 59 Kan. 734; *Burg v. Chicago, R. I. & P. Ry. Co.,* 90 Iowa 106; *Murch v. West N. Y. Ry. Co.,* 85 N. Y. Supp. 601, and in many other cases discussed in these decisions. We do not regard *Neice v. Chicago & A. R. Co.,* 254 Ill. 595, as out of harmony with the decisions above cited. It is there held:

"To run a train in the night time over unlighted station grounds without a headlight, and without any warning or bell or whistle, along a platform where persons may reasonably be expected to be, is evidence tending to prove a wanton and reckless disregard of the safety of such persons." That principle has no just application to the facts in the case before us. We are of opinion that under the evidence in this case, the jury could not reasonably find a verdict for plaintiff. The judgment is therefore affirmed.

*Affirmed.*