No. 21,518.

James Morris and Laura Morris, *Appellees,* v. James W. Lusk et al., as Receivers of the Saint Louis & San Francisco Railway Company, *Appellants.*

SYLLABUS BY THE COURT.

1. Trespasser—*Two-year-old Child on Railroad Track—Duty of Railroad Company.* The duty owed by a railroad company to a child two years old who wanders upon its right of way and track at a place where the presence of children and others is not within reasonable anticipation is to exercise reasonable care to avoid injury to him after discovering his peril.

2. Same—*Speed of Train—Not Negligently Excessive.* Although the neighborhood through which the passenger train was running was populous, a speed of 45 miles an hour along that part of the railroad where the child was struck and where the presence of children and others might not be anticipated, cannot be regarded as negligently excessive as against the child.

3. Same—*Failure of Trainmen to Discover Trespasser—No Violation of Duty.* The failure of the trainmen to have discovered the child at that place at the earliest possible moment, or to have kept a contin-

uous lookout along the track at that time and place, was not a violation of their duty toward him.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed June 8, 1918. Reversed.

*R. R. Vermilion,* and *W. F. Lilleston,* both of Wichita, for the appellants; *W. F. Evans,* of St. Louis, Mo., of counsel.

*C. A. McNeill,* of Columbus, *C. S. Denison,* and *John L. Kirkpatrick,* both of Pittsburg, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: A passenger train of the defendants struck and killed the two-year-old son of plaintiffs, and they brought this action to recover damages for his death. From a judgment in their favor, the defendants appeal.

The place where the accident occurred is in a neighborhood of several villages or country settlements where the track of the railroad runs north and south. The child wandered from his home and upon the railroad's private right of way, which was near by. He was struck when he was at a point about 150 feet south of a much used public highway. The track, for a distance of about a half mile south of this crossing, is practically straight. The negligence charged in the petition was that those in charge of the locomotive failed to exercise reasonable care to discover the perilous position of the child and were operating the train toward the crossing mentioned at a reckless rate of speed, to wit, 45 miles an hour.

Plaintiffs introduced considerable evidence showing the population of the neighborhood and to the effect that a great number of people made daily use of the crossing mentioned, including children returning from school upon that road, especially about four-thirty o'clock. A witness testified that about that time of day he was crossing the track on the highway and saw the train approaching from the south at a rate of about 45 miles an hour; that he also saw the child upon the track about 90 yards south of the crossing; and that he waved at the train and tried to flag it, but that he did not notice any slackening of its speed up to the time it struck the child. There was also testimony that the track was clear and the view un-

obstructed between the approaching train and the crossing, and that at a point about a quarter of a mile south of the crossing the fireman was seen talking and laughing with another person in the cab of the locomotive. At the close of plaintiffs' evidence defendants filed a demurrer thereto, which was overruled.

It appeared from the defendants' evidence that as the train passed the whistling post, about a quarter of a mile south of the crossing, the usual two long and two short blasts of the whistle were sounded and immediately thereafter the engineer and fireman, both of whom were at their proper places of duty, each at about the same instant, discovered for the first time the child's presence on the track ahead of them at a distance estimated by them to be about 200 feet. The emergency brake was set immediately and the steam was shut off, but it was then impossible to stop the train before striking the child. It appeared that the child was wearing a light-colored apron which was about the color of the gravel of the roadbed.

A peremptory instruction was asked by defendants and refused by the court, and the case was submitted to the jury, who returned special findings to the effect that the men in charge of the engine failed to keep a careful lookout which would have enabled them to see the child in time to stop before striking him, and that they were running at a reckless rate of speed at a point where it was to be expected that children would be on the track—at the place where the child was struck. They further found that the engineer applied the brakes and shut off the steam as soon as the child was discovered, which was then about 120 feet from the engine, but it was impossible to stop the train at the rate it was running in time to avoid the accident; and that the place where the accident occurred was about 150 feet south of the highway crossing.

The question of the defendants' negligence was raised by objections to the petition, to the submission of the case to the jury, and to the rendition of judgment on the special findings; and the contention on this appeal is that no duty owed by them to the child was violated, and that no liability against them was either alleged or established. What was the duty of the defendants towards the child? He was on the track and right of

way, the exclusive occupancy of which was in the defendants. There was no crossing at the place, nor any path or passageway over the right of way which persons used by license or permission. He was not in a place frequented by children or other persons, and hence the employees of the defendants had no reason to anticipate his presence at the place he was struck. Under the circumstances the child was a trespasser, and it is well settled that the only duty owed by a railroad company to a trespasser on its tracks is not wantonly to injure him. The rule was stated as follows in *A. T. & S. F. Rld. Co. v. Todd,* 54 Kan. 551, 38 Pac. 804, a case involving the death of a boy who had intruded upon the private grounds and track of a railroad company:

"He was in a place where the company had the exclusive use of the tracks, and where there was no reason to anticipate that intruders or trespassers would be concealed. Under such circumstances, there was no duty on the part of the company to foresee his wrongful presence, nor did any duty arise in his favor until his presence was discovered. As a general rule, before the company can be made liable for injury to trespassers, it must appear that the proximate cause of the injury was the failure of the company to use reasonable care to avoid injury to them, upon becoming aware of the peril to which they were exposed. . . . The only duty which the company owed to him was not to recklessly or wantonly run over him after they discovered him in a place of danger." (p. 558.)

Other cases supporting this view are *C. B. U. P. Rld. Co. v. Henigh, Adm'r,* 23 Kan. 347; *Mason v. Mo. Pac. Rly. Co.,* 27 Kan. 83; *A. T. & S. F. Rld. Co. v. Plaskett,* 47 Kan. 107, 26 Pac. 401; *Railway Co. v. Prewitt,* 59 Kan. 734, 54 Pac. 1067; *Burgess v. Railway Co.,* 83 Kan. 497, 112 Pac. 103; *Hayden v. Railway Co.,* 87 Kan. 438, 124 Pac. 165.

Plaintiffs contend that the Prewitt case tends to uphold a recovery. There a child two and a half years old wandered from its home and lay down on the railroad track, and was probably asleep when it was killed by a train. It was at a place not frequented by children or other persons, and, while those in charge of the train saw an object on the track a moment before they realized it was a child, the discovery was not made in time to avoid running over it. Everything the trainmen could do to save the child after its peril was seen was done by them, and this was held to be the extent of their duty towards the child. Special attention is called to the statement

in the opinion that "had the object perceived by the trainmen been at a highway crossing, where the presence of small children might be suspected, or had it been at a place frequented by them for play, near a schoolhouse, or in or on the outskirts of a village, the case might be different." (p. 739.) This language was used by way of comparison and illustration in a case unlike the one then under consideration, and was not intended as and is not a modification of the rule relating to the duty of a railroad company to a trespasser on its track. A lookout, of course, must be kept for persons upon public crossings, and likewise for the safety of persons passing on or over certain parts of the track by license or permission. The mention of the places frequented by children at play near a schoolhouse, or in a village, only refers to places on a railroad right of way where children frequently resort or are allowed to go, so that those in charge of the trains have reason to anticipate their presence just as they would at a crossing, and under those circumstances a different rule would apply. The facts in the present case do not bring it within that rule. There was a schoolhouse in the neighborhood, but it was not close to the track, nor was it shown that the children attending it ever were on the track or right of way at or near the place where the child was struck. The trainmen had no reason to expect children or adults upon the track at this place and, therefore, were under no duty to keep a lookout for trespassers there. The trainmen had no more reason to anticipate the presence of children on the track than of adults, and the company owed no higher duty to the child until its danger was discovered than if he had been an adult. A different rule applies to a child after his discovery by the trainmen, as they may assume that an adult will leave the track when warning of approach is given, while account must be taken of the immaturity of a child, and of its inability to comprehend the danger, and, hence, greater care for it must be exercised. The obligation of the trainmen to act for the safety of a child does not arise until they discover its peril, and then it becomes their duty to do all they reasonably can to avoid injuring him. Many cases relating to the duty of railroad companies towards infant trespassers are collected in a case note in 32 L. R. A., n. s., 559.

One ground of negligence found by the jury was the high

speed at which the train was running, 45 miles an hour; but, in view of the conceded facts, the rate of speed which the jury characterized as dangerous was not a material element in the case. It is claimed that because so many people lived in the vicinity, which was a mining country and where there were a good many mining camps and hamlets near the railroad, the rate of speed was excessive. It appears that most of the people lived some distance away from the railroad, and there was no law nor regulation limiting the speed of trains in that country. It has been held that in places where no government regulations are prescribed "there is no limit upon the speed at which trains may be run, except that of a careful regard for the safety of trains and passengers." (*A. T. & S. F. Rld. Co. v. Hague,* 54 Kan. 284, 294, 38 Pac. 257; *Land v. Railroad Co.,* 95 Kan. 441, 148 Pac. 612.) The rate of speed through such a country could hardly be regarded as excessive towards any one, but if it had been so as to persons rightfully on the track, it could not be a violation of duty to a trespasser whose presence was not within reasonable anticipation. Neither was the failure of the trainmen to keep a lookout along the track all of the time, or a failure to have discovered the child at the earliest possible moment, a violation of their duty to him. (*Nolan v. N. York, N. Haven & Hartford R. R. Co.,* 53 Conn. 461; Note, 32 L. R. A., n s., 564.) The men in charge of the train are not required to guard against a danger which is not to be anticipated, and under the circumstances of this case they owed the injured child no duty until they saw him on the track and in a place of danger. All the facts show, and the finding of the jury is, that the engineer shut off the steam, applied the emergency brakes, and did all in his power to save the little one as soon as he was discovered on the track. Liability of the defendants for such an injury can only result from a violation of their duty to the injured child, and since it has been established that no duty to it was violated no recovery can be had against the defendants for the lamentable accident.

The judgment of the district court is therefore reversed, and the cause is remanded with directions to enter judgment in favor of the defendants.