No. 24,435.

A. L. SCOTT et al., *Appellees,* v. ST. LOUIS-SAN FRANCISCO RAILWAY
COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

NEGLIGENCE—*Death at Railroad Crossing—Findings of Jury Interpreted—Contributory Negligence.* In a railroad crossing case the special findings are held not to demonstrate that the exercise of due diligence on the part of the driver of the automobile would have avoided the collision, because they do not show at what distance he could have seen an approaching train if he had stopped his car and walked to the track to see if it were clear.

Appeal from Wilson district court; SHELBY C. BROWN, judge. Opinion filed May 12, 1923. Affirmed.

*R. R. Vermillion,* and *W. F. Lilleston,* both of Wichita, for the appellant; *W. F. Evans,* of St. Louis, Mo., of counsel.

*J. L. Stryker,* and *D. J. Sheedy,* both of Fredonia, for the appellees.

The opinion of the court was delivered by

MASON, J.:  A. L. Scott was killed by being struck by a passenger train of the St. Louis-San Francisco Railway Company while attempting to cross its track in an automobile. His sons brought this action against the company and recovered a judgment upon a general verdict. The defendant appeals on the ground that the special findings required a judgment in its favor.

The jury found that the train approached the crossing at the rate of 50 miles an hour and that the automobile approached the railroad track at 12½ miles an hour. To a question calling for the grounds of negligence on which the verdict was based they answered: "Dirt on embankment, weeds, hedge, and grass on their right of way, obstructing the view of their trains." They answered "about 400 feet" to the question: "On the occasion in question, if A. L. Scott had stopped his automobile and looked out along the railroad track to the east in the direction from which the train was coming, when he (where he sat) was fourteen (14) feet north of the railroad track, about how many feet east along said track could he have first seen said engine and train approaching?" Two other questions were asked in the same form, putting the distance from the track at 10 and 9 feet, the answers being "About 500 feet" and "About 600 feet." Obviously the finding just quoted does not mean that if the driver of the automobile when 14 feet from the track had looked he

would have seen the train, which would then have been 400 feet away. If that construction were adopted it would follow from the three findings on the subject that the nearer he got to the track the farther away the train was. The meaning clearly is that at 14 feet he could have seen the train if it was within 400 feet of the crossing—the matter determined being the extent of the field of vision and not the place actually occupied by the train.

The evidence has not been brought to this court and we are required to affirm the judgment if it can be sustained by assuming any reasonable state of facts not negatived by the findings when interpreted as favorably to the plaintiff as their language will admit. We think it consistent with the findings to assume that the driver stopped his car when he was from 9 to 14 feet from the track; that he then observed that he could see no further up the track than from 400 to 600 feet; that he therefore went upon the track and looked; that seeing no train he went back to his automobile, started it up and attempted to cross the track, but was struck by the train and killed. The special findings do not inform us how much more than 600 feet he could have seen up the track while standing upon it. There is no finding that the track was straight for more than that distance. Perhaps the railroad curved at or a little beyond that point and objects on the right of way cut off the view. The jury were asked what if anything there was to obstruct the engineer's view of the automobile from the time it was 20 feet from the track until the collision took place and answered—"Embankment, weeds, hedge and grass." If the track curved it might still have been the embankment, weeds, hedge and grass that cut off the view. And the existence of the curve may have been quite necessary, so no inference of its nonexistence can be made from the failure of the jury to enumerate it as one of the grounds of negligence.

The finding that the automobile approached the track at a speed of 12½ miles an hour might be regarded as negativing the supposition that the driver stopped within 20 feet before attempting to cross, were it not for the fact that in answer to the question whether that was the case the jury answered "We still believe unknown." The failure to stop being one of the possible elements of contributory negligence the answer would seem interpretable as an affirmative (*Croan v. Baden,* 73 Kan. 364, 85 Pac. 532), but at all events it shows the finding that the automobile approached the track at 12½ miles an hour did not mean that no stop was made.

As the train was going 50 miles an hour it would have taken it less than 9 seconds to run from the farthest established point of visibility—600 feet—to the place of the collision. A substantial distance might be added and still it could not be said as a matter of law that the time would be sufficient for the driver, acting with due diligence, to walk to the car, get into it, start it and get across the track to a place of safety in advance of a train which was just beyond his field of vision when he left the track. If it be assumed that the driver stopped his car while he was 14 or even 9 feet from the track and without leaving it, seeing no train within 400 or possibly 600 feet, started up and tried to cross, the 6 or 9 second interval would be too short to justify saying with certainty that by the exercise of due diligence he could have reached a place of safety on the other side of the track before the arrival of the train.

The judgment is affirmed.