No. 29,665.

Oscar Ek and Phoebe Ek, *Appellants*, v. The Chicago, Rock Island & Pacific Railway Company, *Appellee*.

(294 Pac. 663.)

Opinion filed January 10, 1931.

*Henry Torgeson*, of Council Grove, *James V. Humphrey* and *Arthur S. Humphrey*, both of Junction City, for the appellants.

*Luther Burns, J. E. DuMars*, both of Topeka, and *W. J. Pirtle*, of Council Grove, for the appellee.

The opinion of the court was delivered by

Smith, J.: This action was brought by the parents of Chester Ek to recover damages for the alleged negligent killing of Chester by a train of the defendant company at a railroad crossing near White City. A demurrer to the evidence of plaintiff was sustained, and from that ruling plaintiffs appeal.

Chester Ek was a boy just past fourteen years of age. The place where he met his death was the intersection of the tracks of the defendant with McKenzie street in White City. The principal ground of negligence depended upon by plaintiffs was that the depot of defendant, together with other buildings located on the right of way of defendant, and freight cars that were standing on the tracks, obstructed the vision of travelers on the street and rendered this an extra hazardous crossing, which required more than ordinary precaution on the part of defendant.

At the point where the tragedy occurred on the day in question

Chester was driving west along McKenzie street, which is paved, and is the main street of White City. At a point just east of where McKenzie street and the tracks of defendant intersect each other, McKenzie street runs into and becomes a part of state highway No. 10. When it crosses the railroad tracks it connects with a country road, which is the main road to Junction City and Salina. McKenzie street is the main entrance to the city from the west, southwest and northwest. White City is a town of approximately 636 population. There are four tracks maintained by the defendant at the point where this line crosses McKenzie street. The furthest one east is what is known as a house track, and upon it on the day in question some freight cars were standing. This house track is located on the east side of the depot and other buildings of the defendant. Running parallel with the house track and on the west side of the depot is, first, the main line of the defendant, upon which run the northeast-bound trains. This track is located 50 feet west of the house track, but due to the fact that these tracks run northeast and southwest—hence do not cross McKenzie street at a right angle—the driving distance between the house track and the northeast-bound track is 74 feet. Immediately west of the northeast-bound track of defendant and but a short distance away is the main line of the defendant, upon which run the southwest-bound trains, and immediately west of that track is what is known as the passing track. All these tracks pass along the western edge of White City.

The evidence disclosed that after a driver along the west-bound trafficway of McKenzie street was a few feet west of the house track there would be nothing to obstruct his view of a train coming from the southwest except the depot and buildings located between the house track and the northeast-bound track and south of McKenzie street, and that he would have approximately 70 feet in which to drive before his car reached a place where it could be hit by a northeast bound train. These other buildings were all south and either even with or west of the depot, and consisted of a coal house, toilet house, tower house, low shed, coal bin, pump house and stockyards.

The north end of the depot is located 97 feet south of a line drawn at right angles to the point of intersection of the center of the street and the northeast-bound main track. From the north end of the depot to a point in the center of the west-bound trafficway, along which Chester Ek was driving, is 117 feet, and the distance

between the west edge of the bay window of the depot and the east rail on the first track west of the depot is 11 feet and 6 inches, and when one stands in McKenzie street 11 feet and 6 inches from the east rail he can see along the railroad track for several miles. There was also evidence that when standing in the center of McKenzie street 23 feet east of the east rail, by looking south past the depot one could see a train approximately 300 feet away. There was also evidence that when 15 feet distant from the track, measured along the driveway, one could see a train a mile away. The situation seems to be that when 23 feet from the track one traveling west on McKenzie street, as Chester was, could see past the station a distance of 300 feet. When 12 feet from the rail at right angles, or 15 feet along the driveway, one can see a train a mile away. Therefore, from a point 23 feet distant up to a point 15 feet distant, measured along the trafficway, one's view of approaching trains rapidly increases.

The evidence was that Chester knew Rock Island train No. 4 came through from the direction in which the train that hit him came about the time every day that it did on the day in question. He had been over the road many times, both alone and with his parents. On the day in question, as he was going west out of town, he stopped and talked with a friend at a point about 20 feet east of the track where the rubber stop sign was in the street, and then proceeded to drive onto the northeast-bound track, where he was hit and fatally injured by a train coming from the southwest. The rule is so well settled as not to require the citation of authorities that "ordinary care requires that a traveler approaching a railroad crossing shall take such precaution for his safety as would be used by persons of ordinary prudence under like circumstances and conditions." (*Clark v. Atchison, T. & S. F. Rly. Co.,* 127 Kan. 1, 172 Pac. 128, and cases cited therein.) According to the evidence, when he was 15 feet from this track had he looked he could have seen an approaching train for a considerable distance. Evidently he did not do so. The evidence is, further, that had he looked when the front of his car was just a foot or two from the track he could have seen the train several miles away. Had he looked he would be alive to-day. This court is not prepared to say that ordinary care and precaution did not demand of Chester that he proceed to this track slowly enough to stop just before his car got into a position where it

could be hit by a train, and look down the track to see if a train was approaching. We must conclude that his failure to do so was negligence that cost him his life. The appellant argues vigorously that in this case, on account of the age of Chester, the ordinary rule as to the care demanded from one who is about to cross a railroad track does not apply, and that the question of negligence on that account should have been submitted to the jury. This court is not ready to say that the age of fourteen is an age at which a different rule applies as to contributory negligence than to a later age. As has been noted heretofore, Chester Ek had driven the family car for three years with his parents' consent. The authorities hold that an average person of fourteen years of age is chargeable with contributory negligence. (45 C. J. 999.) This court held in *Best v. Railway Co.*, 62 Kan. 299, 62 Pac. 996, as follows:

"In determining whether a person has been guilty of acts amounting to contributory negligence, his age is of no significance except as a mark of capacity. In an action for personal injury to an infant, it is not error for the court to take the case from the jury where it clearly appears that the child had a capacity for self-protection which it culpably omitted to use in face of danger which it knew and sufficiently appreciated." (Syl. ¶ 1.)

The minor who met his death in that case was fifteen years of age, which was about the age of Chester Ek at the time of his death. Chester was a bright boy. He had become a sophomore at high school at fourteen. He had driven a car for three years, the last year by himself. He was familiar with the particular crossing.

When sustaining the demurrer to the plaintiff's evidence the trial court in the case at bar said:

"THE COURT: It had been my impression of the law that whether a minor was chargeable with contributory negligence, accountable for it, was always a question for the jury. I may have been in error as to that. In the 108 Kansas they say, in substance, that from 7 to 14 there is a presumption that they are not of sufficient experience and accountability to be chargeable with contributory negligence, but I take it that during those years it is simply a rebuttal presumption; that prior to seven years, understand, it is a conclusive presumption. We may follow what I take is the logical conclusion from what they say there, that from 14 years on there is a presumption, understand, that they have sufficient capacity to realize their danger. And I had always supposed that there was always a question for the jury; however, our supreme court seems to have held that when it clearly appears that when they have such capacity to realize their danger that it is not necessarily a question for the jury. To step aside from that

feature of the case for a moment: Whether this boy was of such age and capacity as to be chargeable with his negligence is immaterial, unless the defendant itself was negligent. This railroad at that point didn't go through any thickly populated section. Although perhaps not exactly in the country, it was sparsely inhabited. There wasn't any congested traffic over this crossing, and although there were cars, box cars, on the house track and there was the station and other buildings which would obscure the view to the southwest at certain points, there was a safe place from which a view of the track could be obtained before entering upon it; there was a place of safety there from which the track might be observed a sufficient distance so that anyone undertaking to pass over it could avoid danger by simply glancing up the track. We are confronted with the question as to whether or not the circumstances were such as to require the railroad to take any other or additional precautions for the safety of persons going over that crossing than were already there. If the conditions weren't such as to impose upon the railroad company the duty to take other precautions, then the railroad company wasn't negligent. It seems to be that on such a crossing, over a track that was straight, and where there was an opportunity before entering upon it to see it for a very considerable distance, that wasn't through a thickly populated place, where there wasn't any dense or congested traffic, that there wasn't any obligation on the railroad company to take any precaution other than what it did. It appears to me that there isn't a showing of negligence on the part of the railroad company. In view of the decisions, the Kansas decisions, that were read, it seems to me, too, that it also appears that this boy was familiar with that crossing; he was experienced in handling an automobile; he was careful; he was in the habit of slowing up or stopping, we may say, and looking and listening; he had been instructed in all those things, and they said that he ordinarily did those things, and if he had done any one of those things at that time he would have avoided the injury. I think the demurrer should be sustained. That will be the order."

We conclude from the evidence in this case the plaintiff was guilty of contributory negligence as a matter of law and that the judgment should be affirmed. It is so ordered.