No. 33,287

GEORGE SMITH and MRS. GEORGE SMITH, *Appellees*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

(66 P. 2d 562)

Opinion filed April 10, 1937.

*W. L. Huggins*, of Emporia, *Bruce Hurd, C. J. Putt* and *Robert M. Clark*, all of Topeka, for the appellant.

*Roland Boynton*, of Topeka, for the appellees.

.The opinion of the court was delivered by

·THIELE, J.: This was an action to recover damages for wrongful death, and from a judgment against it the defendant appeals.

The principal point in issue is whether in such an action operation of a·railroad train driven by a gas-electric motor, when it is not equipped with a steam whistle to give warning of its approach to a highway crossing, constitutes negligence.

So far as need be noticed, the petition alleged that plaintiffs were the parents of Oliver Smith, who on December 22, 1934, by reason of a temporary nervous breakdown, was incapable of taking care of himself; that a brother, Ray Smith, was taking Oliver Smith in an automobile from Topeka, Kan., to Paris, Tex., and about 12:52 p. m. of that day was traveling east on highway No. 50 near Emporia, when the automobile was struck by defendant's motor train, running in a southerly direction on its railroad, at the point where the railroad crossed the highway; that the collision of the motor train and the automobile, resulting in the death of Oliver Smith, was caused by the negligence of the defendant corporation. Because of the findings of the jury, to which reference is made later, we need notice but one of the five grounds of negligence alleged. It recites:

"That as said motor train approached the intersection of said railway line and said highway above described the agents and employees of said defendant corporation, in the operation of said motor train, wantonly, negligently and carelessly failed to give any warning of the approach of said train to said intersection, and negligently, wantonly and carelessly failed to ring any bells or blow any whistles as a warning to travelers upon said highway of the approach of said train."

The defendant's answer alleged that the accident resulting in the death of Oliver Smith was occasioned solely by the negligence and want of care of the driver of the automobile, and charged, among other things, excessive speed of the automobile, the existence of statutory highway and railroad crossing signs, wigwag warning signals, unobstructed view, and—

"That the whistle on defendant's train was sounding and the bell was ringing, which the driver heard, or by the exercise of ordinary care could have heard, in ample time to have stopped his car had he been proceeding at a lawful, careful, and prudent rate of speed, and thereby could and should have avoided the collision."

and alleged further that defendant was guilty of no negligence.

At the trial defendant demurred to plaintiff's evidence, and although the overruling of the demurrer is specified as error, it is not presented in the briefs and will not be considered. The plaintiff requested, and the trial court submitted, twenty special questions. The defendant requested, and the trial court submitted, fifteen other special questions. The jury returned a verdict in favor of plaintiffs and answered the special questions. As many of the questions and answers pertain to matters not now material, we shall summarize and quote as follows: The motor train was not operated at an excessive speed under all the circumstances and conditions surrounding the intersection in question; there was a regular highway railroad sign about 382 feet west of the crossing and a regular statutory railroad crossing sign at the crossing; there was an electric wigwag sign at the crossing, working just prior to the collision; the defendant had installed and maintained in proper condition such signs and warning signals as under the circumstances and conditions were necessary; the motorman on the train last sounded his horn 400 feet from the crossing and applied brakes before the collision; no obstruction on the right of way obscured the view of a train approaching from the north, and the driver of the car took no precautions to observe the approach of a train to protect himself and his brother. The specific findings involved here are Nos. 6, 17, 18 and 19, submitted by plaintiffs, and No. 14 submitted by the defendant. In order that they may be more conveniently referred to, findings at plaintiffs' request will be followed by the letter "A," that at defendant's request by the letter "B." They are:

"6A. Was the locomotive equipped with a steam whistle such as is required by statute? A. No.

"17A. Did the defendant give warnings by horn, bell or whistle, sufficient and such as were necessary in the exercise of ordinary care under all the circumstances and conditions, to warn travelers on the highway of the approach of the train? A. No.

"18A. If you answer the foregoing question in the negative, was such failure on the part of the defendant negligence? A. Yes.

"19A. If you answer the preceding question in the affirmative, was such negligence a proximate cause of the accident? A. Yes.

"14B. If you find the defendant, or any of its employees or agents, guilty of negligence causing or proximately contributing to the collision and to the death of said Oliver Smith, state in what such negligence consisted and who was guilty of said negligence. A. Yes. Lack of steam whistle—the defendant."

Defendant moved the court to set aside findings 17A, 18A and

19A, on the ground that when considered with other findings they plainly referred to the lack of a steam whistle, which by finding 14B was found to be the proximate cause of the collision, and for the further reason that the petition did not allege lack of a steam whistle as a ground of negligence. This motion was denied, as was defendant's motion for judgment *non obstante veredicto.* Judgment being rendered in favor of plaintiff on the general verdict and findings, defendant appealed.

Before taking up the question whether the lack of a steam whistle was the proximate cause of the accident, we shall consider the appellees' contention that the allegation of negligence is failure to give warning, that under the decisions mere compliance with statutory requirements may not, under all circumstances, be sufficient (*A. T. & S. F. Rld. Co. v. Hague,* 54 Kan. 284, 38 Pac. 257; *Mo. Pac. Rly. Co. v. Moffat,* 56 Kan. 667, 44 Pac. 607; *Deister v. Railway Co.,* 99 Kan. 525, 162 Pac. 282), and that finding 17A, to the effect the defendant did not give such warning by horn, bell or whistle sufficient, and such as was necessary under the circumstances and conditions, convicted defendant of negligence, and it is therefore immaterial whether or not the motor train had a steam whistle. However plausible such an argument may seem, it is apparent it ignores the finding 14B above quoted. Under well-recognized principles, all findings must be reconciled. The question on which finding 17A is based included "warnings by horn, bell or whistle," and any answer made could refer to any one or all three. Therefore, the findings in 18A and 19A could refer to any one or all three. The question on which finding 14B is based demands a specific answer as to what constituted the negligence, and its answer is "lack of a steam whistle." Comparing the findings, it will be noted that the conclusion from 17A, 18A and 19A is general as against the specific conclusion of 14B. The detailed and specific finding must be held to control the general one. See the discussion of a similar contention in *A. T. & S. F. Rld. Co. v. Plunkett,* 25 Kan. 188; *Maris v. Street Railway Co.,* 98 Kan. 205, 158 Pac. 6, and *Koster v. Matson,* 139 Kan. 124, 30 P. 2d 107. We conclude that under the special findings the only negligence of defendant found by the jury consisted in its failure to have its motor train equipped with a "steam whistle." As above indicated, whether the lack of a "steam whistle" constituted actionable negligence is the principal point in this appeal.

A brief review of our statutes shows that chapter 23 of the General Statutes of 1868 provided for organization of railroad corporations and their operations. Under section 47 they could carry passengers and freight by power of steam, of animals, or by any mechanical power. Under section 60 a bell or a steam whistle had to be placed or attached to each "locomotive engine" to give required warnings. By the Laws of 1876, chapter 60, it was required that a steam whistle be attached-to each "locomotive engine," and while this act was amended by the Laws of 1925, chapter 207, this portion, "a steam whistle shall be attached to each locomotive engine," was unchanged. The act, in this particular, has not been changed, and now appears as G. S. 1935, 66-2,120. Of less applicability is the following: Laws of 1901, chapter 286, provided for appointment of a railroad commissioner, and defined a railroad, for the purposes of the act, as one operating, using or maintaining any railroad operated by steam. This court, in *Railroad Co. v. Railroad Commissioners*, 73 Kan. 168, 84 Pac. 755, held that the above act applied only to railroads operated by steam. By the Laws of 1907, chapter 268, the act was amended to include railroads operated by steam, electricity or other motive power.

Appellant argues the statutes with reference to a steam whistle, which provide for fines for their violation, being penal in their nature, should be strictly construed, and, further, that by reason of advancements made in motive power, the statutes should be construed only to mean that trains be equipped with adequate warning signals, and not that a gas-electric driven train, which has no steam generating devices, must have a steam whistle. Appellee argues that the course of legislation outlined above requires that every train be equipped with a steam whistle. Each party is able to find authorities supporting its view.

Appellant relies principally on *Libby v. New York, New Haven & H. R. R.*, 273 Mass. 522, 174 N. E. 171, 73 A. L. R. 101, decided in 1930, wherein it was held that a railroad motor car equipped with an air whistle is not within the operation of a statute making the railroad company liable if it fail to give statutory signals and such failure contributes to the injury. It was further held the statute was penal and not to be extended by mere implication. In the citation last given is a note on the applicability to car or engine driven on rails by motive power other than steam of statutes relating to crossing and other signals, in which it is stated the cases, which cover much more than steam whistles, are in conflict.

A similar question arose in *Franklin, Etc., Ry. Co. v. Shoemaker,* 156 Va. 619, 159 S. E. 100, decided in 1931. The statute in that state required that every railroad company whose line is operated by steam should provide each locomotive engine with a steam whistle. The accident under consideration was a collision of a motor car on the rails and a horse-drawn vehicle upon the highway at a public crossing. In that case it was held that in the construction of statutes words should be given their ordinary meaning, unless it plainly appears the legislature intended otherwise, and that when the crossing-signal statutes were first enacted gasoline motor cars were unknown and that if they are included it is through intendment and construction. The court, in the opinion, after referring to decisions from other jurisdictions, stated it was not easy to say where the mere weight of decided cases rested. Without detailing its reasoning, the court held that a gasoline motor car operated on a railroad was not a "locomotive engine" within the statute requiring giving of designated crossing signals.

Appellee relies on *Sanderson v. Hartford Eastern R. Co.,* 159 Wash. 472, 294 Pac. 241, decided in 1930, in which it was held that the statute requiring the driver of a locomotive on any railroad to sound the whistle at crossings, applied to trains drawn by gasoline-driven motor cars. The statute in that state provided that the term "railway" included those operated by steam, electricity or other motive power. The contention was there made the word "locomotive" meant a large engine propelled by steam, but the court held there was no reason for holding the statute was limited in its application to such a machine; and that the company, having chosen to operate its trains by gasoline-propelled motors, must be held to operate them in compliance with the statute. The court also placed reliance on the fact that the traveling public is familiar with the use of whistles and bells to warn of approach of trains at highway crossings, and that the use of a horn does not carry the same intimation of hazard. We note in the above case that in the statute quoted and in the comment thereon, the word "whistle" is not modified by use of the word "steam." The above case was followed and approved in *Haaga v. Saginaw Logging Co.,* 165 Wash. 367, 5 P. 2d 505, decided in 1931.

In construing statutes we are directed to follow certain rules, one of which is that words and phrases shall be construed according to approved usage, technical words and phrases, which have acquired

a peculiar and appropriate meaning, to have such a construction (G. S. 1935, 77-201, *Second*). Although it is possible to attribute to the words "locomotive engine" the meaning that they refer to any self-propelled vehicle, in Webster's New International Dictionary (2d ed.) the word "locomotive" is defined "a self-propelled engine or vehicle; specif., a steam engine mounted with its boiler and accessories on a truck or trucks designed to run on gauged rails, for hauling cars, wagons, etc., for the conveyance of passengers or freight, etc." It is also stated that locomotives may be classified according to the manner of propulsion as electric, gasoline, compressed air, steam and steam turbine.

It must be remembered that when our statutes of 1868 and 1876, mentioned above, were enacted, the only means of propulsion used on railroads was steam, and while they did not use the adjective "steam" in defining locomotive, it was used to modify the word "whistle." The use of electric motors as a means of driving cars on rails, and the use of gasoline engines, either as a direct drive or in combination with electric generators and motors, to propel railroad trains is a comparatively recent development. The development of the Diesel engine and its use in connection with electric appliances are of very recent date, and as is well known, the use of either electric motors or internal combustion engines, or a combination of the two, has dispensed with and made impracticable any apparatus for generating steam for the purpose of operating a steam whistle to give warning signals, and the warning devices operated by electricity and compressed air have come into general use. Interurban trains operated by electricity and railroad trains operated by gasoline motors were widely used and well known in this state prior to the revision of our statutes in 1923, and the amendment of our statute with reference to steam whistle warnings in 1925, but no attempt was made to compel the use of steam whistles on any different kind of locomotives than were referred to in 1868, unless it be said that the term "locomotive" grew to have a wider meaning. In our opinion, the statute which commences: "A steam whistle shall be attached to each locomotive engine" and provides for the giving of certain warning signals, and provides a penalty for violation thereof, should not be construed to require that a steam whistle, as distinguished from an electrically operated signal or an air horn, must be placed on a railroad train propelled by an electric motor, or a heat-combustion engine, or a combination of the two.

The jury found that all statutory highway warning signs were in place; that an electric wigwag warning signal was in place and operating, and that the motorman had sounded the horn on the train. Although negligence of the driver of the car is not to be imputed to the deceased here, it appears, as the jury found, that the driver ignored every warning given, and failed to take any precaution to protect himself and the deceased, and regrettable as the accident was, it was occasioned through the carelessness of the driver and not from any negligence of the railroad company.

The trial court erred in rendering judgment in favor of plaintiffs and in not rendering judgment in favor of the defendant on the special findings. The judgment of the trial court in favor of plaintiffs and against defendant is reversed, and the cause remanded with instructions to render judgment in favor of the defendant.